# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **BRIAN WURZEL,** | : |
| Plaintiff, | : |
| | : Case No. 3:09 cv 498 |
| v. | : |
| | : Judge James G. Carr |
| **WHIRLPOOL CORPORATION,** | : |
| | : Magistrate Judge Vernelius K. Armstrong |
| Defendant. | : |

## DEFENDANT WHIRLPOOL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff's Response to Whirlpool's Motion for Summary Judgment lacks any evidence or legal authority to establish a genuine issue of material fact. For instance, he simply abandons his FMLA retaliation claim and cites to no evidence or substantive legal argument to support his FMLA interference, intentional infliction of emotional distress ("IIED"), negligent supervision, hiring, and retention claims. While Plaintiff tries to establish his disability claims, he relies on immaterial facts and case law that is either inapposite or distinguishable from the instant case. In the end, summary judgment is proper on Plaintiff's disability claims because Plaintiff has presented no admissible evidence to dispute the following material facts:

- Plaintiff's angina caused him to become dizzy, fatigued, and lightheaded at work on several occasions. Def's Appx., Exs. 1 and 2, Pl. Dep. 33-34, Pl. Dep. Ex. 12.
- Dr. Issa was not aware that Plaintiff had experienced dizziness, fatigue, or lightheadedness as a result of his spasms. Def's Appx., Ex. 6, Issa Dep. at 47-48, 67.
- Dr. Issa was not aware of the work environment at the Clyde Division or details regarding Plaintiff's job duties. Def's Appx., Ex. 6, Issa Dep. at 58.
- Dr. Issa agreed that it may have been unsafe for Plaintiff to operate machinery or work in an unsupervised area since he was experiencing dizziness, fatigue, and lightheadedness. Def's Appx., Ex. 6, Issa Dep. at 69.
- When Plaintiff was restricted from driving company vehicles or tow motors due to safety concerns, he was disqualified from his job as a Materials Handler, not any other job. Def's Appx., Ex. 11, Schulz Aff. at ¶ 7.
- The restrictions given to Plaintiff were based on the attributes of his specific symptoms (i.e., the fatigue, dizziness, and lightheadedness he experienced), not simply because he had angina. Def's Appx., Ex. 14, Marshall Aff. ¶ 15.

Therefore, for the reasons set forth in Defendant's initial Memorandum and below, summary judgment should be granted in its entirety.

## II. ARGUMENT

### A. Plaintiff's Additional Facts Should Be Disregarded

In his response, Plaintiff sets forth a number of additional facts without any citations to record evidence. *See* Pl's Resp. at 10-12. These unsupported factual assertions should be

disregarded by the Court. *See Hunter v. Ralph Trussel*, No. 2:03cv00972, 2006 U.S. Dist. LEXIS 25839, at *20-22 (S.D. Ohio May 2, 2006) (holding summary judgment was proper where the plaintiffs did not cite any evidence to support their contentions).[1] Even if there were evidence to support these assertions, they have no bearing on Plaintiff's claims. For example, while Plaintiff argues that Whirlpool violated HIPPA in disclosing certain of his medical information to Dr. Biswas, he provides no legal support, and there is no such claim in his Amended Complaint. *See Bridgeport Music, Inc. v. Westbound Records, Inc.*, 508 F.3d 394, 400 (6th Cir. 2007) (holding that a plaintiff may not raise a new legal claim in response to summary judgment). Similarly, Plaintiff claims that the gatekeeper position was posted and filled at some point following his medical leave. If this were the case, Plaintiff could have bid on it. The record is clear that, when Plaintiff was placed on sick leave, he was told that he could bid on any position that he thought met his restrictions. Def's Appx., Ex. 11, Schulz Aff. ¶ 14.

    **B.    Plaintiff's Disability Claims Fail Under the ADA, ADAAA, And Ohio Revised Code § 4112.02**

        **1.    Plaintiff Cannot Show That Whirlpool Regarded Him As Disabled In 2008**

Consistent with his deposition testimony, Plaintiff does not argue that he suffers from an actual disability. Although Plaintiff generally states that a record of impairment can form the basis of a disability claim, he offers no evidence to show that he has a record of impairment that substantially limits a major life activity. Thus, Plaintiff must pursue his claim based upon the theory that Whirlpool regarded him as disabled because it considered him substantially limited in the major life activity of working. *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999) (noting that because the plaintiff stipulated that he had no actual disability of any kind, he could only present a "regarded as" claim) (citing 29 C.F.R. § 1630.2(1)).

---

[1] All unpublished cases are attached as Exhibit 6.

In this regard, Plaintiff argues that Whirlpool considered him totally disabled and represented that there was no job in the plant that he could perform, based on the restrictions placed upon him in March of 2008. This is incorrect. As of March 2008, Plaintiff was only restricted from driving a tow motor or company vehicle. This restriction disqualified Plaintiff from only one job (Materials Handler). Def's Appx., Ex. 11, Schulz Aff. ¶¶ 6-7. To that end, Plaintiff was then immediately placed in the Gatekeeper/Tollkeeper position and later bid into the Multi-Process Team Member position in the Paint Department. *Id*. at ¶ 7; Def's Appx., Ex. 3, Schulz Dep. at 28. Thus, there is no evidence to support the conclusion that Whirlpool somehow considered Plaintiff "totally disabled" and unable to perform any job in the plant.

Moreover, since Whirlpool restricted Plaintiff from performing only one particular job, as opposed to a broad range of jobs, the Company did not regard Plaintiff as substantially limited in the major life activity of working. *See Davis v. Mich. Agric. Commodities, Inc.*, No. 08-10077, 2009 U.S. Dist. LEXIS 5582, at *23 (E.D. Mich. Jan. 12, 2009) (granting summary judgment on Plaintiff's disability claim where the employer regarded the plaintiff as limited in performing a particular position or job rather than a broad range or class of jobs). Thus, summary judgment should be granted on Plaintiff's disability claim.

### 2. Plaintiff Cannot Show Whirlpool Regarded Him As Disabled From 2009 To The Present

Plaintiff has presented no evidence that he was subjected to a prohibited action because of his angina, which he is required to do to prove his "regarded as" claim under the ADAAA. 42 U.S.C. § 12102(3)(A) (2009). The undisputed evidence shows that Whirlpool took no action against Plaintiff when the Company first learned of his angina in November of 2007. Indeed, Whirlpool had known of Plaintiff's heart issues since they first surfaced in 2003. Whirlpool restricted Plaintiff's activities only after he began to report and exhibit symptoms such as

3

dizziness, lightheadedness, and fatigue (all of which created a safety risk for Plaintiff in the plant, given the constant presence of moving machinery and vehicles). Thus, Plaintiff has failed to establish that Whirlpool regarded him as disabled, and summary judgment should be granted on his disability discrimination claim.

      **3.**    **Plaintiff Is Not A Qualified Individual With A Disability Because He Poses A Direct Threat To His Safety And The Safety Of Others At The Clyde Division**

In its initial Memorandum, Whirlpool established that Plaintiff could not safely perform the essential functions of his job without posing a direct threat to his safety or the safety of others. There is no dispute regarding the essential functions of Plaintiff's positions. Operating a tow motor is an essential function of the Materials Handler position. Def's Appx., Ex. 11, Schulz Aff. ¶ 6. Likewise, the ability to rotate through all the jobs or stations is an essential function of the Multi-Process Team Member Position (which included inspecting and transferring cabinets, tooling, and working alone on the upper floor of the site). *Id*. at ¶¶ 9-10. The Company determined that Plaintiff could not work in these positions without jeopardizing his safety and the safety of his fellow employees, given the potential for him to, for example, lose control of a tow motor or fall into a moving press. Whirlpool's determination in this regard was based on the medical opinions of Dr. Marshall and Dr. Biswas, two physicians who were generally aware of Prinzmetal angina and the medications used to control it, Plaintiff's specific symptoms, and Plaintiff's job duties and the work environment at the Clyde Division.

Plaintiff offers no contrary evidence regarding the essential functions for the Materials Handler or Multi-Process Team Member positions. Instead, he cites several cases, *e.g., Smith v. Henderson*, 376 F.3d 529 (6th Cir. 2004); *Kiphart v. Saturn Corp.*, 251 F.3d 573 (6th Cir. 2001); *Fenney v. Dakota, Minnesota & R.R. Co.*, 327 F.3d 707 (8th Cir. 2003), without explaining why these cases are relevant to Defendant's Motion. These cases are inapplicable. All three involve

4

failure-to-accommodate claims, and by his own admission, Plaintiff does not seek any type of accommodation from Whirlpool. Def's Appx., Ex. 1, Pl. Dep. at 133. Nor can Plaintiff add such a claim for the first time in opposition to Defendant's Motion. *See Tucker*, 407 F.3d at 788.

While the court in *Kiphart* ultimately found that it was not essential for the plaintiff to rotate through all the functions of his position, that determination was based on that plaintiff's particular job, at that particular worksite, and the fact that the plaintiff had presented testimony from other employees that the teams were not always required to rotate. 251 F.3d at 585. No such contrary evidence exists in this case; nor are the particulars of the plaintiff's job in *Kiphart* directly applicable to Plaintiff's job at Whirlpool.

Plaintiff's response on the "direct threat" issue is similarly misplaced. Citing *Justice v. Crown Cork and Seal Co., Inc.*, 527 F.3d 1080, 1091-1192 (10th Cir. 2008) and *EEOC v. Burlington N. & Santa Fe Railway Co.*, 621 F. Supp. 2d 587, 602 (W.D. Tenn. 2009), Plaintiff argues that Whirlpool was wrong to rely upon the opinions of Drs. Marshall and Biswas instead of Drs. Issa and Stockton (both of whom stated that Plaintiff could work without restrictions). These cases are inapplicable.

In *Justice*, the company had determined that the plaintiff could not work as an electrician without posing a direct threat. 527 F.3d at 1085. The court found that there was a genuine issue of material fact with respect to this issue, because the company's decision had been based on the opinion of management and not the advice of the plaintiff's or the company's physician. *Id*. at 1092. Additionally, the plaintiff had presented sworn statements from fellow electricians that they had never been required to work around machinery in an unprotected fashion, and that any moving parts on the machinery had been covered by guards. *Id*. at 1090. Moreover, the one physician who had found that the plaintiff should have been encouraged to seek employment

5

elsewhere had expressed that opinion after touring the plant with one of the supervisors who had expressed concerns about the plaintiff's safety. *Id.* The court therefore questioned the objectivity of the physician's opinion. *Id.*

The court in *Burlington N. & Santa Fe Railway Co.*, similarly could not conclude that the company was objectively reasonable in having decided that the plaintiff posed a direct threat. 621 F. Supp. 2d at 602. In that case, the company had relied on the opinions of its staff doctors, who had ignored the opinions of the plaintiff's treating physician without ever having seen or examined the plaintiff. *Id*.

This case is nothing like *Justice* or *Burlington N. & Santa Fe Railway Co.* Unlike those cases, Whirlpool's management did not decide that Plaintiff posed a direct threat. Rather, this was the conclusion reached by Dr. Marshall and Dr. Biswas, both of whom had examined Plaintiff directly. Def's Appx., Exs. 7, 9, and 14. Dr. Marshall saw Plaintiff on several occasions regarding his condition and ability to safely return to work at the Clyde Division. Def's Appx., Exs. 7, 8, and 14. While Dr. Biswas only saw Plaintiff once, the information Dr. Marshall provided to Dr. Biswas regarding the additional spasms Plaintiff had experienced at the Clyde Division since is largely undisputed. Def's Appx., Ex. 8, Marshall Dep. Ex. 47.[2]

Further, unlike the plaintiff in *Justice*, Plaintiff presents no evidence which challenges the validity of the safety concerns expressed by Drs. Marshall and Biswas, i.e., that Plaintiff could hurt or kill himself or someone else while operating a tow motor, or while working alone around machinery on the upper level of the plant as a Multi-Process Team Member. Def's Appx., Ex. 14, Marshall Aff. To the contrary, Plaintiff agreed with the inherent dangers in working at the

---

[2] Plaintiff takes issue with the statement in Dr. Marshall's February 19, 2009 letter to Dr. Biswas that Plaintiff had taken 9 Nitroglycerin ("Nitro") without any relief. This is immaterial. Both Dr. Marshall and Dr. Biswas testified that, even if Plaintiff had not taken 9 Nitros, it would not have changed their opinions that the symptoms Plaintiff was experiencing posed safety concerns. Def's Appx., Exs. 9 and 14, Biswas Dep. at 59; Marshall Aff. ¶ 14.

6

plant and operating a tow motor. Def's Appx., Ex. 1, Pl. Dep. at 54, 97-99.

Plaintiff simply concludes that the opinions of Drs. Issa and Stockton are the "best," and that, because they said Plaintiff could work without restriction, Whirlpool should simply have ignored the concerns expressed by Drs. Marshall and Biswas. There is no legal or evidentiary support for this conclusion. Further, the evidence demonstrates that neither Dr. Issa nor Dr. Stockton were fully aware of the symptoms Plaintiff was experiencing or his work environment. Def's Appx., Ex. 6, Issa Dep. at 47-48, 67; Def's Suppl. Appx., Ex. 5, Stockton Dep. at 36-37. Thus, for example, while Dr. Issa may have opined that Prinzmetal angina "typically" does not cause dizziness, fatigue, or lightheadedness, these were the very symptoms which Plaintiff had reported experiencing on multiple occasions while at work. Def's Appx., Exs. 1 and 2, Pl. Dep. 33-34, Pl. Dep. Ex. 12. Hence, Dr. Marshall's and Dr. Biswas' concerns that Plaintiff could not safely perform his job duties were valid.[3]

Similarly, neither Dr. Issa nor Dr. Stockton were aware of the work environment at the Clyde Division and the inherent risks and dangers present as a result of that environment. *Id*. Thus, while Drs. Issa and Stockton opined about Plaintiff's ability to perform certain duties from a cardiac standpoint, they had never actually assessed whether he could safely perform his job duties at the Clyde Division. On the other hand, Dr. Marshall knew, from direct examination, the frequency and extent of Plaintiff's symptoms at work, the work environment at the Clyde Division, and Plaintiff's job duties. Therefore, as a matter of law, Whirlpool was right to rely upon his determination, supported by Dr. Biswas (an independent physician), that Plaintiff posed

---

[3] Plaintiff argues that he told his physicians about all of his spasms and his job duties, and that his physicians believed that he could perform any job. These claims have no support. First, Plaintiff testified in his deposition that his physician's notes accurately depicted what he had told his physicians. Def's Suppl. Appx., Ex. 1, Pl's Dep. at 233. These notes are devoid of any indication that Plaintiff had informed Drs. Issa or Stockton about his dizziness, fatigue, or lightheadedness, or that he had to be taken to the EHC via in-plant ambulance. Def's Suppl. Appx., Ex. 2, Pl's Dep. Exs. 15, 18, and 33. Dr. Issa confirmed as much in his deposition. Def's Appx., Ex. 6, Issa Dep. at 47-48, 67.

7

a direct threat to his safety and that of others. *See, e.g., Garner v. Gwinnett County, Georgia*, No. 96-3431, 1999 U.S. Dist. LEXIS 6370, at *10-11 (N.D. Ga. Mar. 20, 1999) (noting that the ADA did not require an employer to ignore a threat posed by an employee, rely on the conflicting medical opinions of the plaintiff's therapists, and take the risk that the plaintiff would injure his co-workers once reinstated). *See also Moses v. Am. Nonwovens, Inc.*, 97 F.3d 446, 447-48 (11th Cir. 1996) (dismissing disability claims where employee posed a direct threat); *Washington v. Occidental Chem. Corp.*, 24 F. Supp 2d 713, 728 (S.D. Tex. 1998) (employee with history of seizures posed a safety threat and, therefore, was not "qualified" to operate heavy machinery in a petrochemical plant); *Davis*, 2009 U.S. Dist. LEXIS 5582, at *27 (finding the plaintiff was a direct threat where his position was inherently dangerous, and he suffered from an unpredictable seizure disorder).

### 4. Whirlpool Did Not Take Any Unlawful Actions Against Plaintiff Solely Because Of His Angina

In its initial memorandum, Whirlpool established that it had restricted Plaintiff's activities based on his specific symptoms – i.e., the fatigue, dizziness, and lightheadedness Plaintiff had experienced – not simply because he had angina. Plaintiff fails to address this argument in his response. He does, however, acknowledge that he was returned to work with no restrictions on March 1, 2010. *See* Def's Suppl. Appx., Exs. 3 and 4.[4] The reason for this decision further affirms the legality of Whirlpool's actions in this case. As discussed in its initial Memorandum, both Dr. Marshall and Dr. Biswas were, in part, concerned about the fact that the Nitro Plaintiff was taking was contributing to his dizziness. Dr. Marshall had also told Plaintiff that the Company would reconsider his restrictions if Plaintiff brought his spasms under

---

[4] Defendant acknowledges that this evidence was not presented in its initial Memorandum. However, that is because it did not become available until after Defendant's Motion and supporting documents had already been filed. Accordingly, Defendant submits that it is proper for this Court to consider this evidence on its Motion, especially since Plaintiff refers to the fact that Whirlpool returned him to work in his response brief.

8

control and went without symptoms for at least six months. *See* Def's Suppl. Appx., Exs. 3 and 4. Plaintiff visited the Employee Health Center on February 25, 2010 for a return-to-work assessment, indicated his spasms were under control, and that he had gone symptom-free for over six months. He also indicated he was no longer taking Nitro. *Id*. Whirlpool returned Plaintiff to work the following week. *Id*.

The fact that Whirlpool immediately returned Plaintiff to work, even though Plaintiff still has angina, demonstrates that Whirlpool's concerns were not based on Plaintiff's angina alone or any stereotypical beliefs about angina. Rather, Whirlpool was concerned about the uncontrolled nature of Plaintiff's spasms and the symptoms he experienced. Indeed, Whirlpool had been aware of Plaintiff's heart condition for years prior to his diagnosis in November 2007; yet the Company had allowed him to work without restrictions during that time. It was not until Plaintiff started to experience more severe, and more frequent, symptoms that Dr. Marshall became concerned for the safety of Plaintiff and others. For this reason, summary judgment should be granted to Whirlpool on Plaintiff's disability claims. *See Brohm v. J. H. Properties, Inc.*, 149 F.3d 517, 521 (6th Cir. 1998) (decision to terminate anesthesiologist who suffered from a sleeping disorder was not discriminatory where the decision was based on evidence the employee had been sleeping on the job and not unfair presumptions about the condition); *EEOC v. Kinney Shoe Corp.*, 917 F. Supp. 419, 429 (W.D. Va. 1996).

    **C.**    **Plaintiff's FMLA Claims Fail As A Matter Of Law**

        **1.**    **Plaintiff Has Abandoned His FMLA Retaliation Claim**

Defendant set forth evidence and legal analysis as to why Plaintiff's FMLA retaliation claim fails as a matter of law. Def's Initial Memo. at pp. 26-28. Plaintiff's failure to address his FMLA retaliation claim at all in his response brief constitutes abandonment of that claim. *See Johnson v. AK Steel Corp.*, No. 1:07cv291, 2008 U.S. Dist. LEXIS 41573, at *13 (S.D. Ohio

May 23, 2008) (summary judgment was proper where the plaintiff abandoned her claim by failing to respond to the defendant's arguments). *See also Davis v. Cotting Carriers*, 102 F. App'x 938, 939 (6th Cir. June 21, 2004) (explaining that the trial court is under no obligation to search the record to identify a triable issue of fact where the nonmoving party fails to respond to a motion for summary judgment).

### 2. Plaintiff's FMLA Interference Claim Fails

Whirlpool established in its initial Memorandum that Plaintiff's FMLA interference claim fails under both theories set forth in his Complaint because (1) Plaintiff's angina constitutes a serious health condition for which Whirlpool could lawfully have placed him on sick leave; and (2) both the ADA and the EEOC Enforcement Guidelines permitted Whirlpool to require Plaintiff to submit to a medical examination to determine his ability to safely perform job-related functions. *See* Def's Initial Memo. at pp. 24-26. Plaintiff does not address either point. Rather, he simply argues, without any evidentiary or legal citation, that Whirlpool interfered with his right to return to the workforce unrestricted when it ignored the medical evidence he presented from his doctors. This type of conclusory assertion is insufficient to defeat summary judgment. *See Cox v. Ky. DOT*, 53 F.3d 146, 150 (6th Cir. 1995) (noting that the nonmoving party must present affirmative evidence to defeat a properly support motion for summary judgment). It is also an incorrect conclusion of law, based upon the legal argument and authority presented by Whirlpool on this issue. Thus, Plaintiff has abandoned any potential argument he may have had with respect to Whirlpool's decision to place him on medical leave by failing to articulate the argument at all in response to Defendant's Motion. *See Bradley*, 322 F. Supp. 2d at 932 n.7.

### D. Plaintiff's IIED Claim Fails As A Matter Of Law

Plaintiff has failed to present any evidence or legal authority in support of his IIED claim.

10

Instead, he argues, in a conclusory fashion, that "the long pattern of activity designed to keep [him] out of the workplace rises to the threshold of this tort." Pl's Resp. at 15. At the summary judgment stage, Plaintiff must come forth with specific facts and admissible evidence to establish the elements of his IIED claim. *See Cox*, 53 F.3d at 150. Plaintiff's failure to do so warrants the granting of summary judgment on his IIED claim.

### E. Plaintiff's Negligent Hiring, Supervision, And Retention Claims Fail As A Matter Of Law

Whirlpool established in its initial Memorandum that Plaintiff has no evidence to support his negligent hiring, supervision, and retention claims. Def's Memo. at 29-30. In response, Plaintiff states that the fact that he was not allowed to work establishes incompetence and foreseeably resulted in his losses. Plaintiff's failure to support these statements, or any other elements of his negligent hiring, supervision, and retention claims for that matter, with any affirmative evidence or legal citation warrants summary judgment on all of these claims. *See Cox*, 53 F.3d at 150.

### III. CONCLUSION

For the reasons set forth above and in Defendant's initial Memorandum, Defendant requests that the Court grant its Motion for Summary Judgment, dismiss Plaintiff's Complaint in its entirety, with prejudice, and grant Defendant any further relief deemed necessary and appropriate by the Court.

    Respectfully Submitted,

    WHIRLPOOL CORPORATION

    By: /s/ Raven A. Winters
          One of its attorneys

Kent D. Riesen (Local Counsel)
ANSPACH MEEKS ELLENBERGER LLP
300 Madison Avenue, Suite 1600
Toledo, OH 43604


419.246.5757
419.321.6979

Adam C. Wit (*admitted pro hac vice*)
Raven A. Winters (a*dmitted pro hac vice*)
LITTLER MENDELSON
A Professional Corporation
200 N. LaSalle Street
Suite 2900
Chicago, IL 60601
Telephone: 312.372.5520
Facsimile: 312.372.7880
Attorneys for Defendant
Dated: March 17, 2010

12

**Certification Pursuant to Local Rule 7.1(f)**

      I, Raven A. Winters, attorney for Whirlpool Corporation, certify that the above-captioned case has been assigned to the Expedited Track, and that the page limitation for memoranda filed in support of dispositive motions in such cases is 10 pages.  During a telephone conference with Judge Carr on Monday, March 15, 2010, the Court stated Defendant could file a Reply Memorandum in excess of ten pages.

      /s/Raven A. Winters
      Raven A. Winters

## **CERTIFICATE OF SERVICE**

Raven A. Winters, hereby certifies that on March 17, 2010, Defendant Whirlpool Corporation's Reply Memorandum in Support of Its Motion for Summary Judgment was filed electronically. Notice of this filing will be sent to flandry@aol.com by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                /s/Raven A. Winters
                                                  Raven A. Winters